IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Perry Richardson, ) | |
| ) | C/A No.: 3:11-cv-1408-JFA |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER GRANTING** |
| ) | **SUMMARY JUDGMENT** |
| Rent-A-Center East, Inc., ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court pursuant to Defendant's motion for summary judgment (ECF No. 35). The court held a hearing on January 18, 2012. After considering the written materials submitted and the arguments of counsel, the court grants Defendant's motion for summary judgment.

**I.     FACTUAL AND PROCEDURAL HISTORY**

This case arises from the theft of a Nintendo Wii video game system (Wii) from a Rent-A-Center (RAC) store in Cayce, South Carolina. On March 9, 2009, a man stole the Wii from the store, and the store's surveillance system captured the theft. Store manager Vincent Tolliver called the police to report the crime. Sergeant Dufault investigated for the Cayce Police Department, and he and Tolliver watched the video. Tolliver then completed a police report and signed a "Request to Prosecute" form. This form allows the police to carry on a prosecution and obtain a warrant if a victim later

1

decides not to obtain a warrant. Detective Reese investigated but closed the case shortly after opening it due to the absence of any leads.

The key event in the case occurred on or before March 9, 2009, when Darryl Taylor came into the store and spoke with Tolliver. Taylor was a regular customer, and after talking with Tolliver he became aware that a theft had occurred. He states that he saw a photograph, which he identified as "Perry." (Taylor Aff., ECF No. 35-5.) He claims he saw a photograph only, and though he does not remember seeing a video, Tolliver stated that he showed him the video. (Tolliver Dep. 61:10–21, Oct. 6, 2011, ECF No. 35-4.) Moreover, in a signed affidavit, Taylor states that he only provided the first name, but in his deposition, he says that it is possible that he gave both first and last names. (Taylor Aff., ECF No. 35-5; Taylor Dep. 65:21–67:20, November 11, 2011, ECF No. 35-6.) In his deposition, he also states that he may have seen a video rather than a photograph. (Taylor Dep. 60:14–61:9, 65:2–9.) Before leaving, however, Taylor states that he told Tolliver that it was probably not Richardson. (Taylor Dep. 34:22–35:7.) Taylor claims he was only joking around in giving Tolliver information about Richardson. (Taylor Dep. 39:7–11.)

Tolliver passed the information that he learned from Taylor on to Detective Reese. (Tolliver Dep. 61:10–21.) Reese did not obtain Taylor's name from Tolliver. Tolliver stated that the encounter with Taylor was the first time he had ever heard of Richardson. (Tolliver Dep. 63:24–64:25.) Plaintiff has not provided any facts to indicate that Tolliver knew Richardson before the meeting in the store with Taylor. Moreover, plaintiff has not

2

provided any facts to support a theory that Tolliver learned of Richardson's identity–including his last name–from any source other than Taylor.

Detective Reese subsequently brought a photographic lineup that included Richardson's photograph to the RAC. The employee who initially assisted the shoplifter and witnessed the shoplifting, Joe Trzaska, was unable to identify the person he saw in the lineup. Tolliver viewed the lineup and selected Richardson. As a result, Detective Reese attempted to contact Richardson and obtained an arrest warrant. RAC did not sign the arrest warrant. When attempts to contact Richardson at his last known address failed, the police ran his photo in *Runners* magazine, a local publication containing pictures of individuals with outstanding arrest warrants.

Richardson became aware that he was wanted and turned himself in to the Cayce Police. The police detained him overnight at the station because the next bond hearing was the following morning. The police released him the next day. Later, Richardson's defense lawyer, Tivis Sutherland, insisted that Detective Reese view the video with Richardson present to demonstrate that Richardson was not the shoplifter. At a pretrial conference on March 8, 2010, Sutherland, Richardson, Detective Reese, and an RAC employee[1] viewed the video. All agreed that Richardson was not the person in the video. The charges against Richardson were subsequently dropped.[2]

Plaintiff filed suit against Defendant RAC in the Lexington County Court of Common Pleas. Defendant removed the action to this court. Plaintiff eventually

---

[1] Scott Lemon was the representative for RAC. By this time, Tolliver was no longer a RAC employee.
[2] Lemon signed a statement of withdrawal for RAC withdrawing the shoplifting complaint.

3

amended his complaint to include five causes of action: (1) False Imprisonment (2) Defamation (3) Intentional Infliction of Emotional Distress/Outrage (4) Negligence and (5) Malicious Prosecution. Following Defendant's motion to dismiss, the court dismissed the Negligence and False Imprisonment causes of action (ECF No. 20). Defendant now moves for summary judgment as to the two remaining causes of action.[3]

## II.   LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). When evaluating a motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party," *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (internal quotations omitted), and summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trs. of Md. Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's

---

[3] At the start of the hearing held on January 18, 2012, Plaintiff's counsel informed the court that it wished to withdraw the defamation cause of action.

function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. DISCUSSION

*a. Intentional Infliction of Emotional Distress*

Plaintiff must demonstrate the following to establish a claim for intentional infliction of emotional damages:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe so that no reasonable man could be expected to endure it.

*Talamantes v. Berkeley Cnty Sch. Dist.*, 340 F. Supp. 2d 684, 691 (D.S.C. 2004) (citing *Ford v. Hutson*, 276 S.C. 157, 162, 276 S.E.2d 776, 778 (1981)). Moreover, "'where physical harm is lacking, the courts should look initially for more in the way of extreme outrage as an assurance that the mental disturbance claimed is not fictitious.'" *Hansson v. Scalise Builders of South Carolina*, 374 S.C. 352, 650 S.E.2d 68 (2007) (quoting *Ford*, 276 S.C. at 166, 276 S.E.2d at 780)).

The court must "first determine as a matter of law whether or not the conduct in question was outrageous before submitting that question to the jury." *Barber v. Whirlpool Corp.*, 34 F.3d 1268, 1276 (4th Cir. 1994) (citing *Satterfield v. Lockheed Missiles & Space Co.*, 617 F. Supp. 1359, 1365, 1369 (D.S.C. 1985)).

Defendant argues that its conduct was not intentional and reiterates its contention that Plaintiff has not produced evidence to show that RAC employee Tolliver knew Richardson prior to his meeting with Taylor. Plaintiff asserts that, while he has not proven that the conduct was intentional, he has established facts sufficient to support a jury question as to whether the conduct was reckless.

Defendant also contends that the behavior at issue was not outrageous as a matter of law. Defendant argues that merely reporting a crime is not the type of egregious behavior contemplated by this cause of action. *See Nigro v. Va. Commonwealth Univ. Coll. of Va.*, No. 5:09-cv-00064, 2010 WL 2262539 (W.D. Va. June 4, 2010) ("The mere accusation of a crime, however, fails to demonstrate outrageous conduct."); *cf. Hainer v. Am. Med. Int'l*, 320 S.C. 316, 324, 465 S.E.2d 112, 117 (Ct. App. 1996) ("Clearly, the mere reporting of an individual to a licensing board, as mandated by the State, is not conduct so extreme and outrageous that no reasonable person could be expected to endure it.") (internal quotation marks and citations omitted). Plaintiff attempts to distinguish these cases based on the level of the accusation, arguing that in those cases the defendants made the statements to another private party rather than, as here, to the police.

The court finds that the conduct here was not outrageous as a matter of law. The court acknowledges that Plaintiff has created a close question regarding whether Defendant was reckless for passing Richardson's name to the police in the manner that it did. However, even though Defendant concedes its employee made a mistake by not passing all the information from the interaction with Taylor on to police, such conduct

6

does not constitute the type of outrageous conduct necessary to maintain an action for intentional infliction of emotional distress. Reporting information about a crime is not sufficiently outrageous to create a jury question. Moreover, Defendant's conduct is not made more reprehensible by the fact that they reported the conduct to the police rather than another private party. The Defendant had reason to believe that the police, as they in fact did, would investigate the report before deciding to make an arrest. Additionally, Plaintiff suffered no physical harm. The court, therefore, finds that Defendant's actions do not "rise to the level of being atrocious and utterly intolerable in a civilized community." *Barber*, 34 F.3d at 1276. Accordingly, the court grants Defendant's motion for summary judgment as to the intentional infliction of emotional distress claim.

   b. *Malicious Prosecution*

The elements necessary to maintain plaintiff's action for malicious prosecution are as follows:

> (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage. An action for malicious prosecution fails if the plaintiff cannot prove each of the required elements by a preponderance of the evidence, including malice and lack of probable cause.

*Law v. S.C. Dep't of Corrections*, 368 S.C. 424, 629 S.E.2d 642 (2006) (internal quotation marks and citations omitted).

When a court determines the existence of probable cause, "the facts must be 'regarded from the point of view of the party prosecuting; the question is not what the actual facts were, but what he honestly believed them to be.'" *Law*, 368 S.C. at 437, 629

S.E.2d at 649 (quoting *Eaves v. Broad River Elec. Co-op., Inc.*, 277 S.C. 475, 477, 289 S.E.2d 414, 415–16 (1982)). "Malice is defined as the deliberate intentional doing of an act without just cause or excuse." *Law*, 368 S.C. at 437, 629 S.E.2d at 649 (internal citations omitted). The *Law* court also provided the following discussion of malice:

> Malice also may proceed from an ill-regulated mind which is not sufficiently cautious before causing injury to another person. Moreover, malice may be implied where the evidence reveals a disregard of the consequences of an injurious act, without reference to any special injury that may be inflicted on another person. Malice also may be implied in the doing of an illegal act for one's own gratification or purpose without regard to the rights of others or the injury which may be inflicted on another person. In an action for malicious prosecution, malice may be inferred from a lack of probable cause to institute the prosecution.

*Id.* (citations omitted). Finally, the court notes that "[i]t is in the interest of good order that criminals be brought to justice, and malicious prosecution actions are not encouraged." *Elletson v. Dixie Home Stores*, 231 S.C. 565, 571, 99 S.E.2d 384, 387 (1957).

RAC argues that a defendant does not act with malice when all it does is truthfully report information to the police that comes into their possession. Accordingly, the Defendant argues that it did not act with malice because plaintiff has not provided any facts to demonstrate that RAC knew Richardson was not the shoplifter. Plaintiff argues that it is a jury question whether or not probable cause existed.

Defendant also argues that it did not institute the proceedings against the plaintiff. Defendant asserts that it did not sign the arrest warrant, and after it reported the incident, the police were the party responsible for the prosecution. Plaintiff, however, notes that a South Carolina court has held that "[t]he unlawful arrest of respondent was the proximate

result of its manager's instigation and conduct and it is liable therefor even though he did not make or sign the affidavit or warrant." *Elletson*, 231 S.C. at 575, 99 S.E.2d at 389. In that case, however, the Defendant's actions went much farther than in this case: the defendant detained an alleged shoplifter and told police he wanted him "carried in." *Id.* More importantly, the police in this case conducted an investigation following the report before making the arrest.

Generally when an officer has discretion to make a decision as to whether to prosecute, that discretion renders the decision their own and the person who provided the information is not liable. *See* 54 C.J.S. *Malicious Prosecution* § 17 (2011) ("Merely providing information to authorities that is not false does not initiate proceedings so as to give rise to a malicious prosecution claim, if the decision to proceed is left to the discretion of another person, provided that an absence of falsity allows the prosecutor to exercise independent judgment."). For example, where there is an independent investigation following a complaint, the causation between the complaint and the prosecution is severed. *Id.* While courts have still held defendants responsible in such situations where police have the discretion to make the determination, those cases involved a knowingly false report to initiate the investigation or active insistence on the ongoing prosecution. *See Farrell v. Hollingsworth*, 43 F.R.D. 362, 364 (D.S.C. 1968); 54 C.J.S. *Malicious Prosecution* § 17.

In this case, the Defendant merely provided the police with a name, and the police moved the investigation forward. They investigated and made the decision to arrest the plaintiff, and as a result, they were the party who instituted the proceedings against the

9

plaintiff. While Defendant's actions started the chain of events that led to Plaintiff's arrest, it cannot be said that Defendant was the proximate cause of Plaintiff's arrest.

In addition, Defendant neither provided false information nor actively insisted in an ongoing prosecution of Richardson. In this case, the Plaintiff has made no showing that the defendants knowingly provided false information. Though Plaintiff argues that Defendant's provided partial information, the police verified—or attempted to verify—the information before seeking Richardson. As a result, the investigation and decision to proceed was left to the discretion of the police. Unfortunately, during that investigation, plaintiff was misidentified as the shoplifter.[4] The damages occurred at this point when the police sought and subsequently arrested Plaintiff. While the court again acknowledges that it a close question whether RAC acted with malice in making the report, the court finds that the subsequent actions of the police render them the party responsible for instituting the proceedings—a key element in the cause of action. Because the police rather than Defendant instituted the proceedings, the court finds that Plaintiff's claim for malicious prosecution fails as a matter of law.

---

[4] Plaintiff has not produced any evidence to show that the mistaken identification was anything other than a mistake. As a result, the misidentification alone will not support the malicious prosecution claim. *See Martinez v. Peacock*, 535 So. 2d 550, 551 (La. Ct. App. 1988) ("A misidentification . . . that causes a mistaken arrest, does not provide the basis for a civil suit in malicious prosecution.").

## IV. CONCLUSION

For the reasons stated above, the court grants Defendants' motion for summary judgment (ECF No. 35) on Plaintiff's remaining claims. The clerk is instructed to close the case.

IT IS SO ORDERED.

January 20, 2012  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge